UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TRIPLEH PRODUCE LLC, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> LON FRESH LLC, a Texas Company; LON § <br> FRESH PRODUCE, LLC, an Indiana § <br> Company OSWALDO (OZZY) § <br> ESPINOSA, an Individual; LUIS MANUEL § <br> CAMPOS MASSA, an Individual; and, § <br> NAHUM TRESS MARINI, an Individual, § <br> § <br> Defendants. | C.A. NO.: 7:17-cv-00380 |

## FIRST AMENDED COMPLAINT

Plaintiff TRIPLEH PRODUCE LLC ("Plaintiff" and/or "TripleH") for its First Amended Complaint against Defendants LON FRESH LLC, LON FRESH PRODUCE, LLC, OSWALDO (OZZY) ESPINOSA, LUIS MANUEL CAMPOS MASSA, and NAHUM TRESS MARINI, (collectively the "Defendants") alleges and states as follows:

### THE PARTIES

1.  Plaintiff is a Texas limited liability corporation with its principal place of business in Pharr, Texas.

2.  Plaintiff sells wholesale quantities of perishable agricultural commodities (hereinafter "Produce") in interstate commerce and operates its business under a valid United States Department of Agriculture issued PACA License, which is identified as License No. 20070798.

3.  At all times relevant herein, Plaintiff was subject to and licensed under the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. §499a *et seq*.

4. Defendants are:

a. Lon Fresh LLC ("Lon Fresh") a Texas company with its principal place of business located at 2101 W Military Highway, Suite J7, McAllen, TX 78503.

b. Lon Fresh Produce, LLC ("Lon Fresh Produce") is an Indiana company with its principal place of business located at 17655 Cumberland Rd, Noblesville, Indiana, 46060.

c. Oswaldo (Ozzy) Espinosa ("Ozzy Espinosa"), an individual. Upon admission, information and belief, Ozzy Espinosa is or was an officer, director, member, or shareholder of Lon Fresh and Lon Fresh Produce (Lon Fresh and Lon Fresh Produce collectively "the Companies") and in a position or was in a position to control the assets of the Companies. Upon information and belief, Ozzy Espinosa is a resident of Lafayette, Indiana.

d. Luis Manuel Campos Massa ("Luis Campos"), an individual. Upon admission, information and belief, Luis Campos is or was an officer, director, member, or shareholder of the Companies and in a position or was in a position to control the assets of the Companies. Upon information and belief, Luis Campos is a resident of McAllen, Texas.

e. Nahum Tress Marini ("Nahum Marini"), an individual. Upon admission, information and belief, Nahum Marini is or was an officer, director, member, or shareholder of the Companies and in a position or was in a position to control the assets of the Companies. Upon information and belief, Nahum Marini is a resident of McAllen, Texas.

5. At all times relevant hereto, Defendants were engaged in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, are "dealers" of Produce as defined by the Perishable Agricultural Commodities Act, 1930, as amended, 7 U.S.C. §§ 499a-499t (the "PACA").

6.     At all times relevant hereto, Defendants were engaged in the business, of negotiating sales and purchases of Produce in interstate or foreign commerce for or on behalf of a vendor or purchaser, and, therefore, are "brokers" of Produce as defined by the PACA.  Lon Fresh operated under PACA license 20160538 pursuant to the requirements of 7 CFR § 46.3(a).  PACA License number 20160538 lists Lon Fresh and all individual defendants.  No PACA license exists or has existed for Lon Fresh Produce. (Exhibit A)

## JURISDICTION AND VENUE

7.     The District Court has jurisdiction over this civil action arising under § 5(c)(5) of the PACA, 7 U.S.C. § 499e(b)(2), pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367(a).  The Court has *in rem* jurisdiction over the Plaintiff's claims pursuant to, *inter alia*, 28 U.S.C. § 1655.

8.     Venue in this District is based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this District.

## BACKGROUND

9.     Lon Fresh's PACA license states its address in McAllen, Texas.

10.    Lon Fresh Produce does not now and never has held a PACA license as required to "carry on business of a commission merchant, dealer" under 7 CFR § 46.3(a).

11.    At the beginning of the business relationship between TripleH and Lon Fresh, Triple H was led to believe, through Ozzy (a joint owner in both Lon Fresh and Lon Fresh Produce), that there was only one company.  Ozzy lead Triple H to believe the Lon Fresh warehouse in Indiana was the nothing more than Lon Fresh in McAllen, TX expanding its

business and shortening the McAllen company's logistical chain to better serve its customers in and around the Chicago area.

12. Triple H was assured the Indiana warehouse had the same ownership, food safety policies, and product lines as the McAllen warehouse. Based off the representations of made by Ozzy, Triple H believed there was no need to visit or inspect the Indiana facility prior to selling produce to the Companies.

13. Triple H sold produce to both Companies during this timeframe and at all times dealt with the same owners.

14. . Ozzy informed Triple H that Lon Fresh often sourced its produce through Mexico, to the McAllen warehouse as a midpoint, and then on to the Indiana warehouse. At no time did Ozzy indicate that Lon Fresh Produce was a customer of Lon Fresh and such transactions were sales arrangements.

15. Lon Fresh Texas and Lon Fresh Indiana are both liable under the common trust and have violated 7 U.S.C. §499b.

## FACTUAL ALLEGATIONS

16. Between July 28, 2017 and August 30, 2017, Plaintiff sold and delivered to Defendants wholesale quantities of produce, in the current aggregate amount of $168,525.40, as set forth in Exhibit B.

17. Defendants accepted each load of Produce which corresponds to the invoice numbers as listed in Exhibit B.

18. Plaintiff issued to Defendants, and Defendants received, each of the invoices listed in Exhibit B.

19.     Plaintiff is an unpaid supplier or seller of Produce having sold Produce to Defendants for which it remains unpaid.

20.     Defendants failed to pay or otherwise deliver good funds to the Plaintiff despite repeated demands from Plaintiff.

21.     At all relevant times hereto, the Companies acted by and through their joint principals, Ozzy Espinosa, Luis Campos and Nahum Marini.

22.     Under 7 CFR § 46.3(c), joint account arrangements are not considered separate firms and do not require separate licenses. As such under 7 USC §46.3(c), at the very least, Lon Fresh Produce was acting as a branch of Lon Fresh and is liable to Triple H.

## COUNT I

## ENFORCEMENT OF THE PACA TRUST

## ALL DEFENDANTS

23.     Plaintiff re-alleges paragraphs 1 through 22 as though fully set forth herein.

24.     Defendants are in possession, custody and control of all assets derived from the Defendants' sale of: (i) Produce; (ii) food or products derived from Produce; (iii) accounts receivable; (iv) proceeds from the sale of Produce; (v) cash; (vi) any other assets commingled with proceeds of Produce; and (vii) any other assets acquired or maintained with such proceeds, cash, assets, or other trust assets held in Lon Fresh's name (the "PACA Trust Assets") for the benefit of Plaintiff and all other similarly-situated PACA trust beneficiaries.

25.     Defendants failed to deliver to Plaintiff sufficient funds from the PACA Trust Assets for any of the shipments of Produce listed in Exhibit B.

26. Defendants failed to preserve sufficient amounts of the PACA Trust Assets to fully satisfy all qualified PACA trust claims, such as Plaintiff's unpaid claims asserted in this action.

27. The matters and actions alleged in this Count I constitute a violation by Defendants of Section 2 of the PACA.

28. As a direct result of Defendants' failure to properly protect the PACA Trust Assets from dissipation, Plaintiff has suffered damages which are covered under the PACA trust in the current aggregate amount totaling of $168,525.90, plus further interest and contractually due costs of collection, including attorneys' fees, incurred in this action.

29. On information and belief, additional unknown and unpaid trust beneficiaries exist. As a result, Plaintiff further seeks the entry of an Order directing Defendants to immediately turn over to the Registry of the Court all assets impressed with the PACA trust for the benefit of all unpaid trust beneficiaries such as Plaintiff herein, thereby creating a fund for the benefit of said trust beneficiaries.

## COUNT II
## PACA VIOLATION: FAILURE TO PAY PROMPTLY
## ALL DEFENDANTS

30. Plaintiff re-alleges paragraphs 1 through 29 as though fully set forth herein.

31. Defendants received each of the shipments of Produce referenced in Exhibit B.

32. Defendants failed to pay the invoices identified in Exhibit B within the applicable payment terms that were in effect between the parties at the time of each transaction.

33. The matters and actions alleged in this Count II constitute a violation by Defendants of Section 2 of the PACA.

34. As a direct result of Defendants' failure to pay for each invoice within terms, the Plaintiff has incurred damages in the amount totaling $168,525.90, plus pre-judgment interest, costs, and attorney's fees.

### COUNT III
### PACA VIOLATION: FAILURE TO MAINTAIN TRUST
### ALL DEFENDANTS

35. Plaintiff re-alleges paragraphs 1 through 34 as though fully set forth herein.

36. Plaintiff and Defendants entered into a series of transactions involving Plaintiff's sale and the Companies' purchase of Produce between July 28, 2017 and August 30, 2017 (the "Sales Period"). The invoices for the shipments which remain unpaid are identified in the attached Exhibit B.

37. During the Sales Period, the Companies lacked the liquidity or free cash flow to pay Plaintiff for the Produce transactions identified in Exhibit B.

38. During the Sales Period, the Companies' PACA Trust Assets were not freely available to satisfy its outstanding obligations to the Plaintiff.

39. The matters and actions or inactions alleged in this Count III constitute violations by Defendants of Section 2 of the PACA.

40. As a direct result of Defendants' aforementioned actions and inactions, Plaintiff has incurred damages in the amount totaling $168,525.90, plus pre-judgment interest, costs, and attorney's fees.

### COUNT IV
### BREACH OF CONTRACT
### LON FRESH

41. Plaintiff re-alleges paragraphs 1 through 40 as though fully set forth herein.

42. Plaintiff and the Companies entered into the various contracts the unpaid portions of which are referenced in Exhibit B.

43. In each contract, Plaintiff agreed to sell Produce to the Companies and the Companies agreed, *inter alia,* to purchase Produce from the Plaintiff.

44. Plaintiff delivered conforming goods to the Companies and has otherwise satisfied all conditions of said contracts.

45. The Defendants failed to pay for each shipment of Produce referenced in Exhibit B.

46. As a direct result of the Defendants' failure to pay for each shipment of Produce identified in Exhibit B, the Plaintiff has incurred damages in the current aggregate amount totaling $168,525.90, plus further interest and contractually due costs of collection, including attorneys' fees, incurred in this action.

COUNT V
BREACH OF FIDUCIARY DUTY
OZZY ESPINOSA

47. Plaintiff re-alleges paragraphs 1 through 46 as though fully set forth herein.

48. At all times relevant to this action, Ozzy Espinosa was an officer, director, member, or shareholders of the Companies, and the individual in charge of its business undertakings.

49. On information and belief, at all times relevant to this action, Ozzy Espinosa was engaged in the business of buying or selling Produce in interstate or foreign commerce in wholesale or jobbing quantities.

50. At all times relevant to this action, Ozzy Espinosa controlled and managed the Companies' operations and had control over the Companies' financial dealings, including those involving the PACA Trust Assets.

51. At all times relevant to this action, Ozzy Espinosa was in a position to control and manage the Companies' operations and had the ability to control the Companies' financial dealings, including those involving the PACA Trust Assets.

52. At all times relevant to this action, Ozzy Espinosa had the authority to direct the payment of the Companies' operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

53. At all times relevant to this action, Ozzy Espinosa was in a position to influence the Companies' application of its operating funds and otherwise had the power to influence the application or disposition of the PACA Trust Assets.

54. Upon information and belief, at all times relevant to this action, Ozzy Espinosa was authorized signatory on the Companies' bank account(s) and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

55. As officer, director, member, or shareholders of the Companies, Ozzy Espinosa was a statutory trustee with a duty to safeguard the PACA Trust Assets and was required to maintain the trust assets in such a manner as to ensure there were, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as those owed to Plaintiff herein.

56. As officer, director, member, or shareholder of the Companies, Ozzy Espinosa was a statutory trustee with a duty to ensure that the Companies performed all duties, express or implied, arising out of the Companies' undertakings in connection with the Companies' Produce

transactions, which included, *inter alia,* ensuring that there were, at all times, sufficient trust assets available to satisfy all of the Companies' obligations to its unpaid Produce suppliers.

57. As officer, director, member, or shareholder of the Companies, Ozzy Espinosa knew or should have known of the Companies' failure to pay each of Plaintiff's unpaid invoices identified in Exhibit B as they fell due.

58. As officer, director, member, or shareholder of the Companies, Ozzy Espinosa possessed the power necessary to counteract or obviate the decisions of the Companies not to pay Plaintiff and other similarly situated PACA trust beneficiaries or to otherwise dissipate the PACA Trust Assets.

59. Because Ozzy Espinosa controlled and/or was in a position to control the Companies, and the Plaintiff's invoices have not been paid from PACA Trust Assets as its bills fell due, Ozzy Espinosa has breached his fiduciary duty under the PACA trust.

60. Because Ozzy Espinosa was either in control or was in a position to control the Companies, and Ozzy Espinosa failed to ensure that there were, at all times, sufficient trust assets available to satisfy all of the Companies' obligations to Plaintiff as unpaid Produce suppliers, Ozzy Espinosa has breached his fiduciary duty under the PACA trust.

61. Because Ozzy Espinosa was either in control or was in a position to control the Companies, and Ozzy Espinosa failed to counteract or obviate the decisions of the Companies not to pay Plaintiff or other similarly situated trust beneficiaries from the Companies' PACA Trust Assets, Ozzy Espinosa has breached his fiduciary duty under the PACA trust.

62. Ozzy Espinosa continues to hold any and all PACA Trust Assets having come into his possession as trustee for Plaintiff's beneficial interest in the PACA trust.

63. Ozzy Espinosa is personally liable to Plaintiff, which liability is joint and several with the Companies and any third parties having received any PACA Trust Assets with actual or constructive notice of the breach of the PACA Trust, for the dissipation of the PACA trust in the amount totaling $168,525.90, plus pre-judgment interest, costs, and attorney's fees, to be satisfied from Ozzy Espinosa's personal assets.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
## LUIS MANUEL CAMPOS MASSA

64. Plaintiff re-alleges paragraphs 1 through 63 as though fully set forth herein.

65. At all times relevant to this action, Luis Campos was an officer, director, member, or shareholders of the Companies, and the individual in charge of its business undertakings.

66. On information and belief, at all times relevant to this action, Luis Campos was engaged in the business of buying or selling Produce in interstate or foreign commerce in wholesale or jobbing quantities.

67. At all times relevant to this action, Luis Campos controlled and managed the Companies' operations and had control over the Companies' financial dealings, including those involving the PACA Trust Assets.

68. At all times relevant to this action, Luis Campos was in a position to control and manage the Companies' operations and had the ability to control the Companies' financial dealings, including those involving the PACA Trust Assets.

69. At all times relevant to this action, Luis Campos had the authority to direct the payment of the Companies' operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

70. At all times relevant to this action, Luis Campos was in a position to influence the Companies' application of its operating funds and otherwise had the power to influence the application or disposition of the PACA Trust Assets.

71. Upon information and belief, at all times relevant to this action, Luis Campos was authorized signatory on the Companies' bank account(s) and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

72. As officer, director, member, or shareholders of the Companies, Luis Campos was a statutory trustee with a duty to safeguard the PACA Trust Assets and was required to maintain the trust assets in such a manner as to ensure there were, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as those owed to Plaintiff herein.

73. As officer, director, member, or shareholder of the Companies, Luis Campos was a statutory trustee with a duty to ensure that the Companies performed all duties, express or implied, arising out of the Companies' undertakings in connection with the Companies' Produce transactions, which included, *inter alia,* ensuring that there were, at all times, sufficient trust assets available to satisfy all of the Companies' obligations to its unpaid Produce suppliers.

74. As officer, director, member, or shareholder of the Companies, Luis Campos knew or should have known of the Companies' failure to pay each of Plaintiff's unpaid invoices identified in Exhibit B as they fell due.

75. As officer, director, member, or shareholder of the Companies, Luis Campos possessed the power necessary to counteract or obviate the decisions of the Companies not to pay Plaintiff and other similarly situated PACA trust beneficiaries or to otherwise dissipate the PACA Trust Assets.

76. Because Luis Campos controlled and/or was in a position to control the Companies, and the Plaintiff's invoices have not been paid from PACA Trust Assets as its bills fell due, Luis Campos has breached his fiduciary duty under the PACA trust.

77. Because Luis Campos was either in control or was in a position to control the Companies, and Luis Campos failed to ensure that there were, at all times, sufficient trust assets available to satisfy all of the Companies' obligations to Plaintiff as unpaid Produce suppliers, Luis Campos has breached his fiduciary duty under the PACA trust.

78. Because Luis Campos was either in control or was in a position to control the Companies, and Luis Campos failed to counteract or obviate the decisions of the Companies not to pay Plaintiff or other similarly situated trust beneficiaries from Lon Fresh's PACA Trust Assets, Luis Campos has breached his fiduciary duty under the PACA trust.

79. Luis Campos continues to hold any and all PACA Trust Assets having come into his possession as trustee for Plaintiff's beneficial interest in the PACA trust.

80. Luis Campos is personally liable to Plaintiff, which liability is joint and several with the Companies and any third parties having received any PACA Trust Assets with actual or constructive notice of the breach of the PACA Trust, for the dissipation of the PACA trust in the current aggregate amount totaling $168,525.90, plus pre-judgment interest, costs, and attorney's fees, to be satisfied from Luis Campos personal assets.

## COUNT VII
## BREACH OF FIDUCIARY DUTY
## NAHUM TRESS MARINI

81. Plaintiff re-alleges paragraphs 1 through 80 as though fully set forth herein.

82. At all times relevant to this action, Nahum Marini was an officer, director, member, or shareholders of the Companies, and the individual in charge of its business undertakings.

83. On information and belief, at all times relevant to this action, Nahum Marini was engaged in the business of buying or selling Produce in interstate or foreign commerce in wholesale or jobbing quantities.

84. At all times relevant to this action, Nahum Marini controlled and managed the Companies' operations and had control over the Companies' financial dealings, including those involving the PACA Trust Assets.

85. At all times relevant to this action, Nahum Marini was in a position to control and manage the Companies' operations and had the ability to control the Companies' financial dealings, including those involving the PACA Trust Assets.

86. At all times relevant to this action, Nahum Marini had the authority to direct the payment of the Companies' operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

87. At all times relevant to this action, Nahum Marini was in a position to influence the Companies' application of its operating funds and otherwise had the power to influence the application or disposition of the PACA Trust Assets.

88. Upon information and belief, at all times relevant to this action, Nahum Marini was authorized signatory on the Companies' bank account(s) and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

89. As officer, director, member, or shareholders of the Companies, Nahum Marini was a statutory trustee with a duty to safeguard the PACA Trust Assets and was required to

maintain the trust assets in such a manner as to ensure there were, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as those owed to Plaintiff herein.

90. As officer, director, member, or shareholder of the Companies, Nahum Marini was a statutory trustee with a duty to ensure that the Companies performed all duties, express or implied, arising out of the Companies' undertakings in connection with the Companies' Produce transactions, which included, *inter alia,* ensuring that there were, at all times, sufficient trust assets available to satisfy all of the Companies' obligations to its unpaid Produce suppliers.

91. As officer, director, member, or shareholder of the Companies, Nahum Marini knew or should have known of the Companies' failure to pay each of Plaintiff's unpaid invoices identified in Exhibit B as they fell due.

92. As officer, director, member, or shareholder of the Companies, Nahum Marini possessed the power necessary to counteract or obviate the decisions of the Companies not to pay Plaintiff and other similarly situated PACA trust beneficiaries or to otherwise dissipate the PACA Trust Assets.

93. Because Nahum Marini controlled and/or was in a position to control the Companies, and the Plaintiff's invoices have not been paid from PACA Trust Assets as its bills fell due, Nahum Marini has breached his fiduciary duty under the PACA trust.

94. Because Nahum Marini was either in control or was in a position to control the Companies, and Nahum Marini failed to ensure that there were, at all times, sufficient trust assets available to satisfy all of the Companies' obligations to Plaintiff as unpaid Produce suppliers, Nahum Marini has breached his fiduciary duty under the PACA trust.

95. Because Nahum Marini was either in control or was in a position to control the Companies, and Nahum Marini failed to counteract or obviate the decisions of the Companies

not to pay Plaintiff or other similarly situated trust beneficiaries from the Companies' PACA Trust Assets, Nahum Marini has breached his fiduciary duty under the PACA trust.

96. Nahum Marini continues to hold any and all PACA Trust Assets having come into his possession as trustee for Plaintiff's beneficial interest in the PACA trust.

97. Nahum Marini is personally liable to Plaintiff, which liability is joint and several with the Companies and any third parties having received any PACA Trust Assets with actual or constructive notice of the breach of the PACA Trust, for the dissipation of the PACA trust in the current aggregate amount totaling $168,525.90, plus pre-judgment interest, costs, and attorney's fees, to be satisfied from Nahum Marini's personal assets.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY
## INTEREST AND ATTORNEY'S FEES

98. Plaintiff incorporates each and every allegation set forth in paragraphs 1 through 98 above, as if fully set forth herein.

99. PACA and Plaintiff's invoices entitle Plaintiff to recover prejudgment interest and attorney's fees incurred to collect any balance due from Defendants. Further as additional grounds for recovery of attorney's fees, Plaintiff has sent the required notice to recover attorney's fees under Tex. Civ. Prac. & Rem Code §38.001.

100. As a result of Defendants' failure to make full payment promptly for the Produce sold and delivered to Defendants, Plaintiff has lost the use of said money.

101. As a result of Defendants' continued failure to make payment for the Produce sold and delivered to Defendants by Plaintiff, Plaintiff has been required to pay attorney's fees and costs in order to bring this action to require Defendants to comply with their statutory duties under PACA and the invoices.

WHEREFORE, Plaintiff's respectfully seek the entry of an Order providing as follows:

A) As to Count I: (i) entering an Order providing injunctive relief and creating a common fund and/or otherwise compelling the preservation of the Defendants' PACA Trust Assets for the benefit of the Plaintiff's and other similarly-situated PACA trust beneficiaries that properly join in the instant action, (ii) entering an Order directing the Defendants to immediately turn over to the registry of the Court all assets impressed with the PACA trust for the benefit of all unpaid trust beneficiaries such as the Plaintiff's, and; (iii) entering a Final Judgment in favor of Plaintiff's and against the Defendants, jointly and severally, in the current aggregate amount totaling $168,525.90, plus further interest, less any actual recovery on other Counts herein;

B) As to Count II, entering a Final Judgment in favor of Plaintiff's and against the Defendants, jointly and severally, for failing to promptly pay Plaintiff in the amount of $168,525.90, plus interest and attorney's fees, less any actual recovery on other Counts herein;

C) As to Count III, entering a Final Judgment in favor of Plaintiff's and against the Defendants, jointly and severally, for failing to maintain the PACA trust in the current aggregate amount of $168,525.90, plus further interest, less any actual recovery on other Counts herein;

D) As to Count IV, entering a Final Judgment in favor of Plaintiff's and against the Companies for breach of contract in the current aggregate amount of $168,525.90, plus further interest, less any actual recovery on other Counts herein;

E) As to Count V, VI, VII, and VIII entering a Final Judgment in favor of Plaintiff and against Ozzy Espinosa, Luis Campos, and Nahum Marini, on a joint and several basis with the Companies, for a breach of their respective fiduciary duties to the PACA trust, in the

aggregate amount of $168,525.90, plus interest and attorney's fees, less any actual recovery on other Counts herein;

  F) As to Count XI, Plaintiff requests judgment against each of the Defendants, jointly and severally, for prejudgment interest, costs and attorney's fees.

  G) Providing such other and further relief as the Court deems appropriate upon consideration of this matter.

DATED: February 19, 2018.

        Respectfully submitted

        STOKES LAW OFFICE LLP

        */s/* Craig A. Stokes_____
        Craig A. Stokes – SBN 19267700
        Maurleen W. Cobb – SBN 24054377
        3330 Oakwell Court, Suite 225
        San Antonio, TX 78218
        Telephone (210) 804-0011
        Facsimile (210) 822-2595
        cstokes@stokeslawoffice.com
        mcobb@stokeslawoffice.com

        *Counsel for Plaintiff, TripleH Produce LLC*

## **CERTIFICATE OF SERVICE**

  On this the 19th day of February, 2018, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

        */s/* Craig A. Stokes_____
        Craig A. Stokes